# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# ST. JOSEPH DIVISION

| | |
|---|---|
| SONDRA JEAN MINK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 5:17-CV-06088-DGK-SSA |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Sondra Mink ("Plaintiff") petitions for review of an adverse decision by Defendant, the Acting Commissioner of Social Security ("Commissioner"). Plaintiff applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Administrative Law Judge ("ALJ") found Plaintiff had severe impairments of chronic pain syndrome/fibromyalgia, post-traumatic stress disorder ("PTSD"), bipolar disorder, and obesity, but retained the residual functional capacity ("RFC") to perform work as a photocopy-machine operator, shipping weigher, and marking clerk.

After carefully reviewing the record and the parties' arguments, the Court finds the ALJ's opinion is supported by substantial evidence on the record as a whole. The Commissioner's decision is AFFIRMED.

### Procedural and Factual Background

The complete facts and arguments are presented in the parties' briefs and are repeated here only to the extent necessary.

Plaintiff filed her application on June 17, 2014, alleging a disability onset date of February 7, 2013. Plaintiff's date last insured was September 30, 2013, therefore, she had to demonstrate

disability on or before that date. The Commissioner denied the application at the initial claim level, and Plaintiff appealed the denial to an ALJ. The ALJ held a hearing, and on June 6, 2016, found Plaintiff was not disabled. The Appeals Council denied Plaintiff's request for a review, leaving the ALJ's decision as the final decision. Plaintiff has exhausted all administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g).

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's decision. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court must "defer heavily" to the Commissioner's findings and conclusions. *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice, and a decision is not outside this zone simply because the evidence also points to an alternate outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

## Discussion

The Commissioner follows a five-step sequential evaluation process[1] to determine whether a claimant is disabled, that is, unable to engage in any substantial gainful activity by reason of a

---

[1] "The five-step sequence involves determining whether (1) a claimant's work activity, if any, amounts to substantial gainful activity; (2) his impairments, alone or combined, are medically severe; (3) his severe impairments meet or medically equal a listed impairment; (4) his residual functional capacity precludes his past relevant work; and (5) his residual functional capacity permits an adjustment to any other work. The evaluation process ends if a determination of disabled or not disabled can be made at any step." *Kemp ex rel. Kemp v. Colvin*, 743 F.3d 630, 632 n.1 (8th Cir. 2014); *see* 20 C.F.R. § 404.1520(a)–(g). Through Step Four of the analysis the claimant bears the burden of showing

medically determinable impairment that has lasted or can be expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A).

Plaintiff argues the ALJ erred in a myriad of ways: (1) failing to assess the RFC on a function-by-function basis and by assessing the exertional level first; (2) failing to incorporate limitations stemming from Plaintiff's obesity; (3) identifying limitations due to Plaintiff's severe physical impairments without a medical opinion; (4) identifying limitations stemming from Plaintiff's mental impairments without substantial evidence; (5) failing to resolve alleged conflicts between the Vocational Expert's ("VE") testimony and the Dictionary of Occupational Titles ("DOT"); (6) finding that Plaintiff's activities of daily living are inconsistent with disability; and (7) failing to mention two third-party statements in her decision. After reviewing the record and the applicable law, the Court finds these arguments are without merit.

**I.     The ALJ did not err in formulating the RFC.**

    **A.     The ALJ assessed the RFC on a function-by-function basis.**

Plaintiff first argues the ALJ failed to assess the RFC on a function-by-function basis and erroneously assessed the exertional level first. In her opinion, the ALJ noted she relied on the definition of "light work" as contained in 20 C.F.R. § 404.1567(b). Plaintiff argues it is impossible to determine from this definition how the ALJ assessed Plaintiff's actual ability to walk, sit, stand, push, and pull, and that the ALJ assigned an exertional category without first engaging in a function-by-function assessment, all in violation of Social Security Ruling ("SSR") 96-8p.

SSR 96-8p states that the RFC assessment must first identify, on a function-by-function basis, an individual's work-related abilities, including sitting, standing, walking, lifting, and carrying. 1996 WL 374184 (July 2, 1996); s*ee also* 20 C.F.R. § 404.1545(b)-(d). After that

---

that he is disabled. After the analysis reaches Step Five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009).

analysis, the ALJ may express the RFC in terms of the exertional levels of work, such as sedentary, light, medium, heavy, and very heavy. SSR 96-8p. An ALJ can meet the requirements of SSR 96-8p without making explicit findings with respect to every possible functional limitation. *See Depover v. Barnhart*, 349 F.3d 563, 567 (8th Cir. 2003).

The regulation cited by the ALJ in her decision sets forth the requirements for light work in terms of the exertional functions of sitting, standing, walking, lifting, and carrying. Citing the regulatory requirements for light work reflects a function-by-function analysis because the findings address all functional areas. *See Arant v. Astrue*, No. 5:11-6004-DGK-SSA, 2012 WL 1067740, at *4 (W.D. Mo. Mar. 29, 2012) (finding the ALJ's determination that the claimant could perform light work satisfied the requirements of SSR 96-8p). Hence, the ALJ did not err.

**B.     The ALJ considered Plaintiff's obesity in formulating RFC limitations.**

Plaintiff next argues the RFC did not incorporate any functional limitations due to her severe impairment of obesity.

SSR 02-1p states the ALJ should consider a claimant's obesity at various stages in the sequential evaluation process. 2002 WL 34686281 (Sept. 12, 2002). An ALJ satisfies her obligations under SSR 02-1p if she adequately considers the claimant's obesity in her decision evidenced by numerous references to the claimant's weight in the decision. *Heino v. Astrue*, 578 F.3d 873, 881-82 (8th Cir. 2009).

Here, the ALJ restricted Plaintiff to light work which restricts the amount she can lift and carry. Additionally the ALJ limited Plaintiff to only occasional stooping, kneeling, crouching, and crawling. While, the ALJ did not specifically mention Plaintiff's weight, she did limit her RFC in ways that considers her obesity.

4

To the extent Plaintiff argues the ALJ should have identified specific obesity-related limitations, Plaintiff is incorrect. The ALJ is not required to identify limitations in the RFC that relate to any particular condition, including obesity. *See Dean v. Astrue*, No. 11-0001-CV-W-ODS, 2011 WL 3837963, at *5 (W.D. Mo. Aug. 29, 2011) (finding the ALJ was not required to specify a correlation between Plaintiff's obesity and one or more specific limitations); *Lee v. Colvin*, No. 13-0722-CV-WREL-SSA, 2015 WL 181714, at *20 (W.D. Mo. Jan. 14, 2015) (stating that the ALJ was not required to discuss how the claimant's obesity affected each functional ability in her RFC).

C.      **Medical evidence in the record supports the RFC's physical limitations.**

The ALJ acknowledged Plaintiff had severe physical impairments of chronic pain syndrome/fibromyalgia and obesity, however, Plaintiff argues there are no medical opinions in the record as to any functional limitations stemming from these impairments. Plaintiff argues that without these opinions, the ALJ impermissibly relied on her own medical expertise in establishing limitations stemming from these impairments.

An RFC assessment is ultimately an administrative determination reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 404.1527(d) (Commissioner uses medical sources to "provide evidence" regarding several factors, including RFC, but the "final responsibility for deciding these issues is reserved to the Commissioner"). An ALJ need not rely upon a medical opinion when formulating a claimant's RFC. *See Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (stating that "there is no requirement that an RFC finding be supported by a specific medical opinion"). An ALJ can determine a claimant's RFC without a specific medical opinion so long as there is sufficient medical evidence in the record. *Stallings v. Colvin*, No. 6:14-CV-03273-MDH, 2015 WL 1781407, at *3 (W.D. Mo. Apr. 20, 2015).

5

In assessing Plaintiff's physical impairments, the ALJ discussed diagnostic tests and physical examinations which revealed normal or only mild findings. She also noted Plaintiff received conservative treatment during the relevant time, which consisted primarily of prescription medication. This is substantial evidence to support the ALJ's findings. *See Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (ALJ's RFC finding of light work was supported by some medical evidence, including diagnostic tests showing only mild degenerative changes).

Plaintiff also argues the ALJ should have ordered a consultative examination, however, it is the claimant's burden to prove her RFC, not the Commissioner's. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). The ALJ has a duty to develop the record only when a crucial issue is undeveloped and the evidence is insufficient to allow the ALJ to form an opinion. *Martise v. Astrue*, 641 F.3d 909, 926-27 (8th Cir. 2011). To show the record was not fully developed, the plaintiff must show both a failure to develop necessary evidence and unfairness or prejudice resulting from that failure. *See Haley v. Massanari*, 258 F.3d 742, 749–50 (8th Cir. 2001). As long as the record contained enough evidence to permit the ALJ to reach an informed decision, the record was complete. *See id.*; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (stating that an ALJ is permitted to issue a decision without obtaining additional medical evidence if other evidence in the record provides a sufficient basis for the ALJ's decision).

Here, Plaintiff has not demonstrated the ALJ failed to develop the record or that failure to do so resulted in prejudice. The record contained evidence of her physical impairments, thus, there was a sufficient basis for the ALJ's decision.

> **D.** **The RFC's limitations stemming from Plaintiff's severe mental impairments is supported by substantial evidence.**

Next, Plaintiff argues the ALJ erred in defining limitations stemming from her severe mental impairments of PTSD and bipolar disorder, because the only opinion in the record as to

those impairments was a non-examining, non-treating, State agency physician, which the ALJ assigned "little weight." As discussed above, the ALJ was not required to rely on a medical opinion in formulating the RFC.

Additionally, Plaintiff argues the ALJ did not assess a limitation in interacting with supervisors. However, Plaintiff does not point to any evidence in the record that would support a finding that Plaintiff is limited in her ability to interact with supervisors. *Eichelberger*, 390 F.3d at 591 (finding it is the claimant's burden to prove her RFC, not the Commissioner's).

**II.     The Court cannot find a conflict between the VE's testimony and the DOT.**

Plaintiff's next set of arguments focus on Step 5 of the sequential evaluation process. Specifically, Plaintiff argues that for the job shipping weigher, the DOT classifies this job as something other than repetitive, while the RFC limits Plaintiff to repetitive work.

SSR 00-4p requires the ALJ to "ask about any possible conflict" between VE evidence and "information provided in the DOT." If there is an "apparent unresolved conflict" between VE testimony and the DOT, the ALJ must "elicit a reasonable explanation for the conflict" and "resolve the conflict by determining if the explanation given provides a basis for relying on the [VE] testimony." 2000 WL 1898704, at *2-4 (Dec. 4, 2000). "If there is an unrecognized, unresolved, and unexplained conflict between the VE's testimony and the DOT, the VE's testimony cannot provide substantial evidence to support the ALJ's disability determination." *Bray v. Colvin*, No. 4:12-01257-CV-W-DGK-SSA, 2013 WL 6510743, at *2 (W.D. Mo. Dec. 12, 2013).

Plaintiff's theory of error relies on the job temperament code assigned to shipping weigher. Shipping weigher is assigned a code "T", which refers to attaining precise set limits, tolerances, and standards, rather than an "R", which denotes repetitive or short-cycle work. Plaintiff doesn't

7

cite to any authority that states a code "T" job cannot be repetitive, and so the Court cannot find there is an unresolved conflict here.

Assuming a conflict does exist, the remaining jobs the VE identified satisfy the Commissioner's burden at Step 5. The VE testified there were 51,000 jobs nationally for a photocopy-machine operator and 100,000 jobs nationally for a marking clerk. Because these jobs exist in significant numbers in the national economy, there is no reversible err. *See Welsh v. Colvin*, 765 F.3d 826, 930 (8th Cir. 2014) (finding a significant number of jobs existed when there were 36,000 nationally).

### III. The ALJ properly considered Plaintiff's activities of daily living.

Plaintiff complains that the ALJ improperly considered her activities of daily living to find that she was not disabled. The ALJ found Plaintiff's activities of daily living did not support her subjective complaints of disabling limitations. For example, Plaintiff reported she lives by herself, drives, shops, attends the movies, visits with friends and family, goes out to eat at restaurants, cares for her dog, attends church, attends weekly bible study, volunteers with her church weekly including visiting the elderly and, although after the time period at issue here, vacationed in Spain and Portugal for a month. R. 28, 31-32, 34-38. Plaintiff has also had a part-time job past her date last insured and continued to provide massage therapy treatments to her clients through 2016. R. 32, 165, 194, 350, 353, 374-75.

The ALJ did not err. The ALJ may consider a claimant's activities of daily living and discount her subjective complaints of disabling pain if the activities are more extensive than would be expected if the person was disabled. *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (finding the ALJ did not err by relying on the claimant's daily activities in discrediting his subjective complaints).

**IV. The ALJ did not commit reversible error by failing to discuss two third-party statements in her decision.**

Finally, Plaintiff argues the ALJ committed reversible error by failing to discuss two third-party statements in her decision. Plaintiff theorizes that because the statements were not discussed in the ALJ's opinion, they were not considered.

An ALJ must consider all evidence from medical and non-medical sources in evaluating the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529. However, an ALJ is not required to discuss all the evidence of record, and the failure to cite specific evidence does not mean that the ALJ ignored it. *See Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010). Merely failing to discuss a third-party statement is not reversible error. *See Buckner*, 646 F.3d at 559-60.

Plaintiff does not argue these third-party statements contain any facts not already in the record or that they would have a bearing on the outcome in this case. Rather, the statements tend to repeat much of the Plaintiff's hearing testimony, which the ALJ discounted. The evidence that discredited Plaintiff's subjective complaints also undermines the statements from the third-party reports. Accordingly, the ALJ did not commit reversible error.

**Conclusion**

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:   July 19, 2018                                   /s/ Greg Kays
                                                        GREG KAYS, CHIEF JUDGE
                                                        UNITED STATES DISTRICT COURT